UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CHAMROEUN PHENG, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civil No. 05-62-B-W |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent | ) | |

### *Recommended Decision on 28 U.S.C. § 2254 Petition*

Chamroeun Pheng, who is facing removal from the United States by immigration officials and hopes to stave this action off, has filed a 28 U.S.C. § 2254 petition seeking relief from his conviction by the State of Maine for aggravated assault.  Pheng, who seeks expedited review of his § 2254 petition in view of the pending immigration action (see Docket Nos. 2 & 3) argues that he has newly discovered evidence that supports a claim that he is actually innocent and, as asserted in his amended petition, that his right to equal protection was violated.[1]  The State of Maine has filed a motion to dismiss arguing that the petition is not timely, that the constitutional grounds raised here were not adequately presented to the Maine State Law Court and, consequently, are procedurally defaulted, and that Pheng's actual innocence claim, raised to excuse his procedural default, cannot be the basis for proceeding with § 2254 review unless there is a viable independent constitutional violation.  For the reasons that follow, I recommend that the Court **DENY** Pheng 28 U.S.C. § 2254 relief.

---

[1]      Pheng mentions his right to due process and confrontation in the amended petition but does not develop theories independent of his actual innocence and equal protection claims in his memorandum in opposition to the respondent's motion to dismiss.

## *Discussion*

### *Background*

There were three defendants charged with the assault of Ernest Dubeau in Portland, Maine during a September 2000 street-party-scuffle.   Based on Dubeau's identification the three charged were Chamroeun Pheng, his brother David Pheng, and Jason McGoldrick.   The three defendants were tried separately.   After Pheng was convicted, McGoldrick, who proceeded on a self-defense theory, was also convicted.   David Pheng was a juvenile and his trial was presided over by a state District Court judge.   This judge acquitted David.   With respect to the basis for David Pheng's acquittal, the judge reflected:

> I really didn't find Ernest Dubeau to be particularly credible either. I had a hard time accepting the testimony of somebody who only answers the questions and tailors their testimony to the particular case that is confronting them. . .I really have a very strong perception that Mr. Dubeau was naming the people that he knew and wasn't really sure who it was who attacked him.

(Sec. 2254 Mem. at 2, citing David Pheng Tr. Vol. II at 67: 8-15.)

The inconsistencies in Dubeau's testimony on which Chamroeun Pheng bases his § 2254 claims are:

- In Chamroeun Pheng's trial, he testified that he was going to the park to "mingle." In David Pheng's trial he testified he was going to a party.
- In Jason McGoldrick's trial, he testified that he had 2 ½ to 3 beers in the hours before the incident; in David Pheng's trial he testified he had 1-2 beers.
- In Chamroeun Pheng's trial, he testified that when he was hit on the head from behind he wasn't talking to Alin, Chamroeun, David, Jason and Dara: "I wasn't talking directly to them. There were a group of kids standing around and they were all around the kids." In David Pheng's trial he testified that he was speaking directly to Chamroeun and Dara when he got hit from behind by a baseball bat. In the Jason McGoldrick trial, he testified that Chamroeun Pheng and Jason McGoldrick were "over in the crowd a little bit behind the people I was talking to."
- In Chamroeun Pheng's trial, he testified that after he was hit with the "bat," he stumbled a bit and went right down to the ground. In Jason McGoldrick's trial, he testified that Jason McGoldrick came up, punched him in the face, and while that punch was knocking him down, he was tackled by a bunch of people, which brought him to the ground. J.M.T.T. at 51: 6-25; 52: 1-3. In David Pheng's trial, he testified that he got hit in the back of the head, got hit by Jason, fell forward, then, as he was on all fours, got kicked in the stomach, and knocked over to the side.

- At the Chamroeun Pheng trial, he testified that he fell face down on his stomach. At the Jason McGoldrick trial, he testified that he fell "sort of face first."
- At the Chamroeun Pheng trial, he testified that the first thing he remembered about the assault was waking up in his bedroom a few weeks later. At the David Pheng trial, he testified that he remembered being in the hospital, looking at his little niece "standing there in disgust," looking at "my aunts and my uncles just looking at me in disgust," seeing his family, being stuck in a neck brace, and not being able to move around.
- In the Chamroeun Pheng trial he testified that he didn't have any recollections of being at the hospital at first, but after awhile he had "dreams of this night and everything," and that he had "flashes in my head of all my family standing in the waiting room." At the David Pheng trial he testified "it wasn't dreams, I mean it was just my memory."
- In the Chamroeun Pheng trial he testified that he saw "flashes as in every time I looked up, you know I - - I got hit in the face, and closed my eyes, turned my head, looked up again, I guess that's what I mean as flashes." In David Pheng's trial, he admitted, that he used the term "flashes of people," it wasn't exactly what he meant.

(Sec. 2254 Mem. at 6-8.)

With respect to his efforts to get relief from the state courts based on these testimonial inconsistencies, Chamroeun Pheng filed a timely motion for a new trial with the transcripts demonstrating the above inconsistencies.[2] This motion was denied by the justice who indicated, mystifyingly, "the evidence could have been discovered before trial by the exercise of due diligence" and, less mystifyingly, "or it is not probable that the evidence would lead to a different result in a new trial." On July 8, 2004, the Maine Law Court denied the appeal summarily, indicating that the trial court neither abused its discretion nor committed an error of law.

### Reason for Dismissal of the 28 U.S.C. § 2254 Petition

The body of Pheng's motion for a new trial in the state court stated: "Now comes the Defendant, by and through undersigned counsel, and moves for a new trial, pursuant to Rule 33 of the Maine Rules of Criminal Procedure, on the grounds of newly discovered evidence." (Sec. 2254 Pet. Attach. A-6.) In addition to this sentence there are two footnotes explaining that the newly discovered evidence was Dubeau's testimony at the two subsequent trials and the ruling of the judge presiding over

---

[2]      Pheng also file a state petition for post-conviction relief that alleged ineffective assistance of trial counsel which is not relevant to this § 2254 petition.. This ground is not resurrected here.

David Pheng's trial, as well as reciting the standard for granting a new trial.  And while this court does not have a copy of Chamroeun Pheng's notice of appeal of the denial of the motion for new trial, the State represents, and Pheng does not challenge this representation, that the brief did not raise a constitutional claim.

Accordingly, I agree with the State that any claim under the United States Constitution has not been exhausted as required by 28 U.S.C. § 2254(b)(1)(A), and is procedurally defaulted. "As the Supreme Court reiterated this past term,"

> a federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus "[o]ut of respect for finality, comity, and the orderly administration of justice." Dretke v. Haley, 541 U.S. 386, [388] (2004). This is a reflection of the rule that "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." Id. at 1852; see Wainwright v. Sykes, 433 U.S. 72, 81 (1977). The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review. Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir.2002). An allegation of "actual innocence," if credible, is one such "miscarriage of justice" that enables courts to hear the merits of the habeas claims.

Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004).  Pheng does not argue that there was cause and prejudice apropos his default, compare Haley, 541 U.S. at 388, 393-94, but stands only on a claim that he is entitled to § 2254 review because there has been a miscarriage of justice.

However, in Herrera v. Collins the Supreme Court reiterated its conclusion that: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  506 U.S. 390, 400-01 (1993) (citing Townsend v. Sain, 372 U.S. 293, 317 (1963)).  The Court further explained:

> But this body of our habeas jurisprudence makes clear that a claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.
> 　　　　Petitioner in this case is simply not entitled to habeas relief based on the

reasoning of this line of cases. For he does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. The fundamental miscarriage of justice exception is available "only where the prisoner <u>supplements</u> his constitutional claim with a colorable showing of factual innocence." <u>Kuhlmann [v. Wilson]</u> [477 U.S. 436,] 454 [(1986)] (emphasis added). We have never held that it extends to freestanding claims of actual innocence. Therefore, the exception is inapplicable here.

<u>Id.</u> at 404-05. <u>Compare</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 15 (1995) ("Schlup's claim of innocence does not by itself provide a basis for relief. Instead, his claim for relief depends critically on the validity of his <u>Strickland</u> and <u>Brady</u> claims.").

The distinction drawn between Herrera's claim and the claims before it in <u>Schlup v. Delo</u> is an important one for Pheng. <u>Schlup</u> explained:

[A] court's assumptions about the validity of the proceedings that resulted in conviction are fundamentally different in Schlup's case than in Herrera's. In <u>Herrera</u>, petitioner's claim was evaluated on the assumption that the trial that resulted in his conviction had been error free. In such a case, when a petitioner has been "tried before a jury of his peers, with the full panoply of protections that our Constitution affords criminal defendants," 506 U.S., at 419 (O'CONNOR, J., concurring), it is appropriate to apply an " 'extraordinarily high' " standard of review, <u>id.</u>, at 426 (O'CONNOR, J., concurring).

Schlup, in contrast, accompanies his claim of innocence with an assertion of constitutional error at trial. For that reason, Schlup's conviction may not be entitled to the same degree of respect as one, such as Herrera's, that is the product of an error free trial. Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner such as Schlup presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

513 U.S. at 315-16. [3]

In his amended petition Pheng attempts to distinguish his petition from Herrera's by asserting that there was an independent constitutional violation; he argues that his equal protection rights were

---

[3]    Furthermore, Pheng's newly discovered evidence is not the sort of evidence that <u>proves</u> he is actually innocent. <u>See</u> <u>Conley v. United States</u>, 323 F.3d 7, 14 n.6 (1st Cir. 2003).

violated because he was convicted on the basis of the testimony of Dubeau yet his brother was acquitted after his brother's trial judge concluded that Dubeau was not a credible witness to the crime. (Pet.'s Mem. Opp'n Mot Dismiss at 3.)   However, this is not a viable independent constitutional claim because the Equal Protection Clause "does not assure uniformity of judicial decisions" or "immunity from judicial error" Beck v. Washington, 369 U.S. 541, 554-55 (1962), nor protect against inconsistent verdicts by juries, United States v. Dotterweich, 320 U.S. 277, 279 (1943) or judges, Harris v. Rivera, 454 U.S. 339, 343-48 (1981). See also United States v. Chilingirian, 280 F.3d 704, 710 -11 (6th Cir. 2002) ("Both prior and subsequent to Harris, other circuits have held that inconsistent verdicts rendered by a judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury.") .

In Harris v. Rivera, the Supreme Court explained that the question that the petitioner seeking habeas relief from his state sentence had standing to raise was whether his trial was fairly conducted -- i.e., that the record contained adequate evidence of guilt and that the proceedings were conducted fairly.  454 U.S. at 348.  And, even assuming his co-defendant's acquittal was "logically inconsistent" with the petitioner's conviction, the petitioner, "who was found guilty beyond a reasonable doubt after a fair trial, has no constitutional ground to complain that [his co-defendant] was acquitted."  Id.; see also Dellinger v. Bowen, 301 F.3d 758, 767 -68 (7th Cir. 2002) (co-defendant's sentencing windfall does not redound to the § 2254 petitioner's benefit on an equal protection theory); see also cf. United States v. Lawrence, 179 F.3d 343, 347 -49 (5th Cir. 1999) (concluding that there was no equal protection or due process claim apropos the government's decision to take contrary positions with respect to co-defendants' § 2255 motions involving identical facts and legal issues).

As the Rivera Court explained:

> This case does not raise any question concerning the significance that an
> appellate court may attach to an apparent inconsistency in a verdict that is subject to
> review on direct appeal. This federal proceeding constituted a collateral attack on the
> final judgment of a state court that already had been affirmed on direct appeal. In such a
> proceeding a federal court is authorized to issue "a writ of habeas corpus in behalf of a

person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

454 U.S. at 343.

Rivera makes it clear that it was for the Maine courts to address Pheng's claim and determine if they should attach significance to any apparent inconsistency between Chamroeun Pheng's and his brother's verdicts.  Based on the comments made by David Cheng's judge about the victim/witness's want of credibility it would not have been surprising had the court accorded greater significance to the inconsistencies in testimony and verdicts.  However, the judge presiding over Chamroeun Pheng's motion for the new trial reflected:

> Now, it may very well be that the judge got it right and the two juries got it wrong.  It's also as a matter of logic just the opposite that the judge was unduly skeptical and the juries got it right.  And they believe something that was in fact true.  So the question is because there's a later acquittal, [w]hy does that undo or potentially undue the first two convictions [?]

(Mot. New Trial Tr. at 3, Docket No. 1 Attach. 12.).  Despite Pheng's counsel's well-articulated argument for why his client was entitled to a new trial based on the victim/witness's material inconsistencies, the judge (whether or not he was accurate in suggesting that the information could have been discovered before trial with the exercise of due diligence) concluded that it was "not probable that the evidence would lead to a different result in a new trial."   The Maine Law Court did not see a reason to disturb this decision and this court, per Rivera, does not review that determination under the Equal Protection Clause.

Finally, I have not forgotten that the State's first argument for dismissal is one premised on the 28 U.S.C. § 2254 statute of limitation.   The question is a close one in my view and seems to be ultimately dependent on whether or not the Court considers the new evidence to have been discovered at the time the victim testified at the second and third trials or at the time that the trial judge acquitted

Pheng's brother and commented on the victim's lack of credibility.  Because I view <u>Herrera</u> as controlling I have not parsed the question but should the Court reject this recommendation the State would be entitled to have this ground for dismissal looked at in more depth.

### *Conclusion*

For the reasons explained above I recommend that the Court **GRANT** the State of Maine's motion to dismiss Chamroeun Pheng's 28 U.S.C. § 2254 petition.

### <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated: June 1, 2005.                         /s/ Margaret J. Kravchuk
                                             U.S. Magistrate Judge